UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BANK OF THE WEST, a California banking corporation,<br><br>Plaintiff,<br><br>v.<br><br>DON G. WHITE, et al.,<br><br>Defendants. | CASE NO. 2:08-cv-01658-KJD-RJJ<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This matter came before this Court on Plaintiff Bank of the West's (the "Bank" or "Plaintiff") Motion for Summary Judgment, Memorandum of Points and Authorities in Support of Motion (1) for Summary Judgment, or in the Alternative, Partial Summary Judgment; and (2) to Determine Fair Value of Real Property (the "Motion") [Dkt. No. 32], filed with the Court on August 28, 2009. The Court considered the Separate Statement of Uncontroverted Material Facts in Support of Motion (1) for Summary Judgment, or in the Alternative, Partial Summary Judgment; and (2) to Determine Fair Value of Real Property [Dkt. No. 32], the Declaration of Robert B.

Kaplan in Support of Motion (1) for Summary Judgment, or in the Alternative, Partial Summary Judgment; and (2) to Determine Fair Value of Real Property [Dkt. No. 32]; the Declaration of Noreen Gouveia in Support of Motion (1) for Summary Judgment, or in the Alternative, Partial Summary Judgment [Dkt. No. 34]; the Declaration of Keith Harper in Support of Motion (1) for Summary Judgment, or in the Alternative, Partial Summary Judgment; and (2) to Determine Fair Value of Real Property [Dkt. No. 36], and the accompanying exhibits thereto, filed in support of the Motion, each filed by the Bank on August 28, 2010.  The Court also considered Defendants' Request for Hearing and Appointment of Independent Appraiser Pursuant to NRS 40.475, filed September 23, 2009 [Dkt. No. 37], and Plaintiff's Opposition to Defendants' Request for Hearing and Appointment of Independent Appraiser Pursuant to NRS 40.475, filed October 7, 2009 [Dkt. No. 38].

On March 16, 2010, the Court issued a Minute Order in Chambers (the "Minute Order") [Dkt. No. 39], in connection with Plaintiff's Motion for Summary Judgment, and ordered Defendants to submit evidence demonstrating an actual question of fact regarding the valuation of the subject property no later than March 23, 2010.  In the Minute Order, the Court ordered that the affidavit submitted with Defendants' Request for Hearing and Appointment of Independent Appraiser does not meet Defendants' obligations under Federal Rule of Civil Procedure 56(e)(2).  Under the Minute Order, the Court ordered that failure to submit appropriate evidence will result in summary judgment being entered against them, setting the hearing for March 25, 2010.

On March 24, 2010, in connection with the Court's March 16, 2010 Minute Order, the Court issued a Minute Order in Chambers [Dkt. No. 40], relating to Plaintiff's Motion for Summary Judgment, finding that Defendants failed to file any evidence in response to the Court's Minute Order, and vacated the hearing scheduled for March 25, 2010.

The Court having reviewed the Motion for Summary Judgment, and good cause appearing therefore, the Court enters the following Findings of Fact and Conclusions of Law.  To the extent that a Finding of Fact should properly be designated as a Conclusion of Law, it shall be deemed a Conclusion of Law.  To the extent that a Conclusion of Law should properly be designated a Finding of Fact, it shall be deemed a Finding of Fact.

## I. FINDINGS OF FACT

1. Effective as of August 25, 2006, Saddle Ridge Residential, LLC ("Saddle Ridge" or "Borrower") executed that certain Construction Loan Agreement in favor of Bank wherein Bank agreed to make various extensions of credit to Borrower subject to the terms and conditions set forth therein (the "Loan Agreement No. 1").

2. On or about August 25, 2006, Borrower executed in favor of Bank a Promissory Note in the original principal amount of $4,505,000.00 (the "Note No. 1").

3. In order to secure repayment of all obligations owed by Borrower to Bank pursuant to the Note No. 1 and the Loan Agreement No. 1, Borrower, as trustor, executed and delivered to Bank that certain Deed of Trust dated as of August 25, 2006 (the "Deed of Trust No. 1") in favor of First Santa Clara Corporation, as trustee, for the benefit of Bank, as beneficiary, with respect to the Real Property located in Clark County, State of Nevada ("Property No. 1"), which was recorded on September 1, 2006 in the Official Records of the Clark County Recorder's Office.[1]

4. An Event of Default (as defined in the Loan Documents No.1) occurred under the Loan Documents No. 1 because of, <u>inter alia</u>, the failure of Borrower to pay all outstanding obligations due and owing pursuant to the Note No. 1 on its maturity date of September 5, 2007.

5. Bank demanded that Borrower repay to Bank all outstanding obligations due and owing by Borrower to Bank pursuant to the Loan Documents No. 1, but Borrower wholly failed, refused, and neglected to pay said sums and such failure continues to the date hereof.

6. Bank has duly performed all the conditions precedent on its part required to be performed under the terms of the Loan Documents No. 1.

7. On or about August 25, 2006, defendants Don G. White ("White"), Nevada Pacific Housing Corporation ("Nevada Pacific"), formerly known as Pageantry Communities, Incorporated, and Pageantry Development Corporation ("Pageantry Development") and Western Residential Housing, LLC formerly known as Pageantry Residential, LLC ("Western Residential" and

---

[1] The Loan Agreement No. 1, the Note No. 1, the Deed of Trust No. 1, and any other documents executed, delivered, or required in connection with any of the foregoing are hereinafter collectively referred to as the "Loan Documents No. 1".

collectively with White, Nevada Pacific, and Pageantry Development the "Guarantors") each made, executed and delivered to Bank their respective Commercial Guaranties (collectively, the "Guaranties No. 1").

8. Pursuant to the terms of the Guaranties No. 1, Guarantors agreed to guarantee full and punctual payment and satisfaction of the Indebtedness (as defined in the Guaranties No. 1) of Borrower to Bank and the performance and discharge of all Borrower's obligations under the Loan Documents No. 1, as more specifically set forth therein.

9. Prior to the commencement of this action, Bank made demand on Guarantors for payment of the obligations sued upon herein based upon the Guaranties No. 1, but Guarantors failed, refused, and neglected to pay said sum or any sum.

10. Pursuant to the terms of the Guaranties No. 1, Guarantors agree to pay Bank all reasonable attorney's fees, costs and expenses incurred by Bank in connection with the enforcement of Bank's rights under the Guaranties No. 1.

11. Effective as of February 12, 2007, Borrower executed that certain Construction Loan Agreement in favor of Bank wherein Bank agreed to make various extensions of credit to Borrower subject to the terms and conditions set forth therein (the "Loan Agreement No. 2").

12. Effective as of February 12, 2007, Borrower executed in favor of Bank a Loan Extension Agreement (the "Loan Extension No. 1") which amended certain terms of the Loan Agreement No. 2.[2]

13. On or about February 12, 2007, Borrower executed in favor of Bank a Promissory Note in the original principal amount of $5,215,000.00 (the "Note No. 2").

14. In order to secure repayment of all obligations owed by Borrower to Bank pursuant to the Note No. 2 and the Amended Loan Agreement No. 2, Borrower, as trustor, executed and delivered to Bank that certain Deed of Trust dated as of June 20, 2006 (the "Deed of Trust No. 2") in favor of First Santa Clara Corporation, as trustee, for the benefit of Bank, as beneficiary, with

---

[2] The Loan Agreement No. 2 and the Loan Extension No. 1 are hereinafter collectively referred to as the "Amended Loan Agreement No. 2".

1  respect to the Real Property located in Clark County, State of Nevada ("Property No. 2"). The Deed
2  of Trust No. 2 was recorded on February 28, 2007 in the Official Records of the Clark County
3  Recorder's Office.[3]

4      15.    An Event of Default (as defined in the Loan Documents No. 2) occurred under the
5  Loan Documents No. 2 because of, inter alia, the failure of Borrower to pay all outstanding
6  obligations due and owing pursuant to the Note No. 2 on its maturity date of June 5, 2008.

7      16.    Bank demanded that Borrower repay to Bank all outstanding obligations due and
8  owing by Borrower to Bank pursuant to the Loan Documents No. 2, but Borrower wholly failed,
9  refused, and neglected to pay said sums and such failure continues to the date hereof.

10     17.    Bank has duly performed all the conditions precedent on its part required to be
11 performed under the terms of the Loan Documents No. 2.

12     18.    On or about February 12, 2007, Guarantors each made, executed and delivered to
13 Bank their respective Commercial Guaranties (collectively, the "Guaranties No. 2").

14     19.    Pursuant to the terms of the Guaranties No. 2, Guarantors agreed to guarantee full
15 and punctual payment and satisfaction of the Indebtedness (as defined in the Guaranties No. 2) of
16 Borrower to Bank and the performance and discharge of all Borrower's obligations under the Loan
17 Documents No. 2, as more specifically set forth therein.

18     20.    Prior to the commencement of this action, Bank made demand on Guarantors for
19 payment of the obligations sued upon herein based upon the Guaranties No. 2, but Guarantors
20 failed, refused, and neglected to pay said sum or any sum.

21     21.    Pursuant to the terms of the Guaranties No. 2, Guarantors agree to pay Bank all
22 reasonable attorney's fees, costs and expenses incurred by Bank in connection with the enforcement
23 of Bank's rights under the Guaranties No. 2.

24 . . .

25 . . .

---

[3] The Amended Loan Agreement No. 2, the Note No. 2, the Deed of Trust No. 2, and any other documents executed, delivered, or required in connection with any of the foregoing are hereinafter collectively referred to as the "Loan Documents No. 2".

22. On December 3, 2008, Bank recorded a separate Notice of Breach and Default and of Election to Cause Sale of Real Property Given Under Deed of Trust with respect to Deed of Trust No. 1 and Deed of Trust No. 2 in the Official Records of the Clark County Recorder's Office.

23. On June 3, 2009, Bank caused the recordation of a separate Substitution of Trustee for Deed of Trust No. 1 and Deed of Trust No. 2, substituting Fidelity National Title Insurance Company as trustee thereunder in the Official Records of the Clark County Recorder's Office.

24. On June 22, 2009 a trustee's sale was conducted of Property No. 1 and Property No. 2 pursuant to the Deeds of Trust.

25. As of the June 22, 2009 date of the trustee's sale conducted of Property No. 1, the amount of the Indebtedness (as that term is defined in the Guaranties No. 1) owed by Guarantors to Bank pursuant to the Guaranties No. 1 was $2,975,728.42.

26. As of the June 22, 2009 date of the trustee's sale conducted of Property No. 2, the amount of the Indebtedness (as that term is defined in the Guaranties No. 2) owed by Guarantors to Bank pursuant to the Guaranties No. 2 was $2,783,755.38.

27. On July 7, 2009, Fidelity National Title Insurance Company, as Trustee, recorded a separate Trustee's Deed Upon Sale in the Official Records of the Clark County Recorder's Office for the trustee's sales of Property No. 1 and Property No. 2 (collectively, the "Trustee's Deeds").

28. Pursuant to the Trustee's Deeds, Bank was the highest bidder at the trustee's sales conducted and was the purchaser of each of the Properties based on the following credit bid amounts: $1,002,971.75 for Property No. 1 and $435,539.70 for Property No. 2.

29. As of the June 22, 2009 date of the trustee's sale of Property No. 1, Guarantors were indebted to Bank pursuant to the terms of Guaranties No. 1 in the total amount of $2,975,740.42, which was comprised of the principal sum of $2,464,490.00, plus interest in the amount of $470,580.67, plus attorneys' fees and costs in the amount of $27,686.00, plus foreclosure fees in the amount of $12,983.75. On the date of the trustee's sale of Property No. 1, Bank credit bid the amount of $1,002,971.75 as set forth in paragraph 28 above and applied the $1,002,971.75 to the interest, attorneys' fees and costs, foreclosure fees due and owing with the remaining balance applied to a portion of the principal amount due and owing pursuant to Guaranties No. 1. As of

August 21, 2009, Guarantors are indebted to the Bank pursuant to Guaranties No. 1 in the total amount of $2,004,626.12, which is comprised of the principal sum of $1,972,768.67, plus interest thereon in the sum of $29,592.00 from and after June 22, 2009 through August 21, 2009, which is accruing thereafter at the rate of $493.20 per day from August 21, 2009 through and including the date of entry of Judgment, plus attorneys' fees and costs in the amount of $2,265.45 from June 22, 2009 through and including August 21, 2009, plus additional attorneys' fees and costs from August 21, 2009.

30. As of the June 22, 2009 date of the trustee's sale of Property No. 2, Guarantors were indebted to Bank pursuant to the terms of Guaranties No. 2 in the total amount of $2,802,372.79, which was comprised of the principal sum of $2,367,024.01, plus interest in the amount of $396,197.08, plus attorneys' fees and costs in the amount of $26,600.00, plus foreclosure fees in the amount of $12,551.70. On the date of the trustee's sale of Property No. 2, Bank credit bid the amount of $435,539.70 as set forth in paragraph 28 above and applied the $435,539.78 to the interest, attorneys' fees and costs, foreclosure fees due and owing with the remaining balance applied to a portion of the principal amount due and owing pursuant to Guaranties No. 2. As of August 21, 2009, Guarantors are indebted to the Bank pursuant to Guaranties No. 2 in the total amount of $2,403,615.34, which is comprised of the principal sum of $2,366,833.09, plus interest thereon in the sum of $34,516.80 from and after June 22, 2009 through August 21, 2009, which is accruing thereafter at the rate of $575.28 per day from August 21, 2009 through and including the date of entry of Judgment, plus attorneys' fees and costs in the amount of $2,265.45 from June 22, 2009 through and including August 21, 2009, plus additional attorneys' fees and costs from August 21, 2009.

31. The total fair market value of the Properties as of June 22, 2009, was $2,490,000.

## II.  CONCLUSIONS OF LAW

### A.  Plaintiff's Claims for Relief: Breach of Guaranties

32. Saddle Ridge, Borrower and the Bank entered into Loan Documents No. 1 and Loan Documents No. 2.

. . .

33. The Bank loaned funds to Saddle Ridge and Saddle Ridge accepted the money lent pursuant to the Loan Documents No. 1 and Loan Documents No. 2.

34. The Guarantors entered into the Guaranties No. 1 and Guaranties No. 2.

35. Saddle Ridge breached Loan Documents No. 1 and Loan Documents No. 2 based on Saddle Ridge's default of its obligations thereunder by, inter alia, failing to make timely payments under the Loan Documents No. 1 and Loan Documents No. 2.

36. The Guarantors breached the terms of the Guaranties No. 1 and Guaranties No. 2, based on their default of the obligations due thereunder by, inter alia, failing to make timely payments thereunder after Saddle Ridge defaulted under its obligations due under the Loan Documents No. 1 and Loan Documents No. 2.

37. As a result of the breach of the Guaranties No. 1, Plaintiff suffered damage arising from the outstanding obligation owed by Guarantors pursuant to the Guaranties No. 1.

38. As a result of the breach of the Guaranties No. 2, Plaintiff suffered damage arising from the outstanding obligation owed by Guarantors pursuant to the Guaranties No. 2.

39. The indebtedness owed by Guarantors pursuant to the Guaranties No. 1 and the Guaranties No. 2 as of August 21, 2009 is $4,408,241.46, for which Bank is entitled to a deficiency judgment against the Guarantors, jointly and severally, in the amount of $4,408,241.46, plus additional interest and attorneys' fees incurred by Bank from August 21, 2009 through date of entry of Judgment.

### B. Fair Market Value of the Properties

40. The total fair market value of the Properties of $2,490,000 as of June 22, 2009, is the amount used in calculating the deficiency against the Guarantors pursuant to Nevada Revised Statute § 40.555.

### C. Affirmative Defenses

41. Guarantors' affirmative defenses are without merit, on the basis that the Guarantors have provided no facts in support of their nine affirmative defenses asserted in their Answer to the Complaint.

### III. ORDER

Based upon the findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure and good cause appearing, it is hereby

**ORDERED, ADJUDGED AND DECREED** that Plaintiff Bank of the West's Motion for Summary Judgment, Memorandum of Points and Authorities in Support of Motion (1) for Summary Judgment, or in the Alternative, Partial Summary Judgment; and (2) to Determine Fair Value of Real Property is GRANTED as to liability;

**IT IS FURTHER ORDERED** that Judgment pursuant to Guaranties No. 1 as of August 21, 2009 is $2,004,626.12 as of August 21, 2009, which is accruing thereafter at the rate of $493.20 per day from August 21, 2009 through and including the date of entry of Judgment, plus additional attorneys' fees and costs from August 21, 2009, be entered, jointly and severally, against defendants Don G. White, Nevada Pacific Housing Corporation, formerly known as Pageantry Communities, Incorporated, Pageantry Development Corporation and Western Residential Housing, LLC, formerly known as Pageantry Residential, LLC.

**IT IS FURTHER ORDERED** that Judgment pursuant to Guaranties No. 2 as of August 21, 2009 is $2,403,615.34, which is accruing thereafter at the rate of $575.28 per day from August 21, 2009 through and including the date of entry of Judgment, plus additional attorneys' fees and costs from August 21, 2009, be entered, jointly and severally, against defendants Don G. White, Nevada Pacific Housing Corporation, formerly known as Pageantry Communities, Incorporated, Pageantry Development Corporation, and Western Residential Housing, LLC, formerly known as Pageantry Residential, LLC.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to recover post-judgment interest, attorneys' fees and costs incurred in executing and enforcing the Judgment.

. . .

. . .

. . .

. . .

. . .

. . .

1  A separate Judgment shall be prepared and submitted to the Court.

2  **IT IS SO ORDERED.**

4  `Date: May 25, 2010`

_____
UNITED STATES DISTRICT JUDGE